Filed 10/17/17; Certified for Publication 11/8/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | | |
|---|---|---|
| FRANCISCO DIAZ, | | |
| Plaintiff and Respondent, | | G053909 |
| v. | | (Super. Ct. No. 30-2014-00752373) |
| PROFESSIONAL COMMUNITY MANAGEMENT, INC., | | O P I N I O N |
| Defendant and Appellant. | | |

Appeal from a judgment of the Superior Court of Orange County, Theodore R. Howard, Judge. Affirmed with directions.

Hill, Farrar & Burrill, E. Sean McLoughlin and William A. Meyers for Defendant and Appellant.

Employee's Legal Advocates, A. Jacob Nalbandyan and Charles L. Shute, Jr., for Plaintiff and Respondent.

\* \* \*

A "sharp practice" is defined as a "dealing in which advantage is taken or sought unscrupulously." (Webster's 3d New Internat. Dict. (2002) p. 2088.) This is an appeal borne of sharp practices.

Defendant Professional Community Management, Inc. (PCM), unilaterally orchestrated the issuance of an appealable order by: (1) applying ex parte, a mere 11 days before trial, for an order shortening time to hear its motion to compel arbitration; (2) voluntarily submitting a proposed order to the trial court that not only reflected the court's denial of the ex parte application — the only ruling reflected in the trial court's own minute order — but also included *a denial of the motion on the merits*; and (3) promptly appealing from that order, which then stayed the scheduled trial.

We conclude PCM engaged in this course of conduct because, as respondent Francisco Diaz argued below, it anticipated the court would deny its motion to compel arbitration in any event, and it sought to obtain an appealable ruling issued before the trial commenced. PCM could then spin that ruling into a vehicle for seeking pretrial appellate review of the analysis underlying the court's order denying its related motion for summary judgment. Thus, PCM carefully tailored the order it proposed the court issue, incorporating what it characterized as the trial court's reasons for rejecting the *summary judgment motion*, and excluding any mention of issues that might distract from that analysis.

PCM has continued its aggressive strategy on appeal, contending Diaz is precluded from arguing that PCM had *waived its right* to compel arbitration — the most obvious defense when such a motion is filed on the eve of trial. According to PCM, Diaz cannot make that argument because the trial court's premature denial of the motion to compel (at PCM's request) meant Diaz never argued waiver in an opposition to the motion; and because the order *PCM drafted* did not reflect the trial court had relied on it as a basis for denying the motion. Instead, PCM claims Diaz is relegated to defending

2

the court's ruling based *solely* on the analysis PCM crafted in its proposed order, and that we must assess the propriety of that order based solely on that analysis as well.

There are several reasons why PCM cannot succeed in this appeal. But the most significant is the fact PCM *invited* the trial court's alleged error when it proposed the court issue the very ruling it now challenges on appeal. By doing that, PCM won the battle — it got the court to issue the appealable order it sought, prior to trial — but it lost the war. A party that invites the trial court to commit error is estopped from challenging that error on appeal.

We conclude PCM and its counsel acted in bad faith, generating an appealable order they knew the trial court had not intended to issue at the ex parte hearing, for the purpose of obtaining a delay of trial. Any confusion about the scope of the court's intended ex parte ruling was resolved by the court's own minute order, issued in the wake of the hearing. Further, PCM's claim that it had prepared its proposed order in compliance with California Rules of Court, rule 3.1312, is specious, and we note the format and content of the proposed order appears deliberately designed to obscure its inclusion of the appealable provision.

Alternatively, we conclude the order denying PCM's motion to compel arbitration should also be affirmed on the merits, based on our determination that PCM has waived its right to compel arbitration. We acknowledge that as a result of PCM's machinations, the court made no such express ruling, but we invoke our authority under Code of Civil Procedure section 909 to find that PCM has acted in bad faith in connection with the motion to compel arbitration.[1] And, when we combine that finding with other undisputed procedural facts, we conclude, as a matter of law, that PCM has waived its right to compel arbitration. Our invocation of section 909 is appropriate in the unusual circumstances of this case because we would otherwise feel compelled to remand the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

3

case to the trial court for a determination of the waiver issue — and any other defenses to arbitration Diaz might wish to raise — because the premature issuance of the order denying PCM's motion denied him a fair opportunity to do so. As section 909 states, it is intended to be construed liberally for the purpose of ensuring that "where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court . . . ." That goal of resolving a cause in one appeal is particularly important in a case such as this, where one party has already manipulated the appellate process in a patently unfair manner.

Finally, we also impose monetary sanctions against PCM and its counsel, E. Sean McLoughlin and William A. Meyers, for bringing a frivolous appeal. In accordance with California Rules of Court, rule 8.276, we notified PCM and its counsel that we were considering sanctions, and invited their response to specified concerns. While they did provide a satisfactory explanation for two of the actions we questioned, they also effectively conceded engaging in the conduct we were most disturbed by: i.e., they voluntarily sought an order denying their own motion, with the goal of generating pretrial appellate jurisdiction. We reject counsel's claim that they believed the court actually intended to deny PCM's motion to compel arbitration outright at the ex parte hearing, or that they were confused about the scope of the court's intended ruling. We conclude instead that PCM and its counsel acted in bad faith.

4

FACTS[2]

Diaz was employed as a tree trimmer by PCM for many years. He filed his complaint against it in October 2014, stating various causes of action arising out of PCM's alleged failure to reasonably accommodate the workplace restrictions imposed by his doctor, its alleged retaliation, and its alleged wrongful termination of his employment. PCM answered the complaint in December 2014, denying the allegations and pleading 24 affirmative defenses. The 24th affirmative defense alleged that Diaz's complaint "and each cause of action, is barred by [his] failure to exhaust contractual remedies available to him, including, but not limited to, the grievance and arbitration procedure under the collective bargaining agreement between [PCM] and [Diaz's] collective bargaining representative."

A trial date was set for March 21, 2016. But in February 2016, the court granted PCM's ex parte application to continue the trial date, selecting August 15, 2016 as the new trial date. The court's order reflected that the discovery cut off and other trial-related deadlines were established in accordance with the August 15 trial date.

In April 2016 — a year and a half after the case was filed, and one month after the original trial date — PCM moved for summary judgment. It argued it was entitled to judgment as a matter of law based on the grievance and arbitration procedure contained in the Collective Bargaining Agreement (CBA) it had entered into with Diaz's union. According to PCM, that grievance and arbitration procedure — alleged as the basis of its 24th affirmative defense — was the mandatory and exclusive remedy for addressing the claims alleged in Diaz's complaint, and Diaz's failure to exhaust that

---

[2] On the court's own motion we augment the record to include the following documents filed in the Orange County Superior Court case No. 30-2014-00752373: the order dated February 11, 2016; the minute order dated August 4, 2016; the notice of stay of proceeding filed on August 15, 2016; and, the minute order dated September 1, 2016.

remedy prevented him from proceeding on those claims in court. PCM also argued that any attempt by Diaz to challenge the validity of the CBA provisions would be preempted by Federal labor law. Diaz opposed the motion for summary judgment, and, after hearing argument, the court took it under submission.

On August 2, 2016, the court denied the motion for summary judgment. Although the court's analysis was lengthy, it summarized its grounds for denying summary judgment as "1) there is a question of fact whether [the CBA's] arbitration proceedings are fair and 2) [PCM] has not shown that . . . any . . . term of the [C]BA has to be interpreted in order to deal with [Diaz's] FEHA claim. Therefore, [Federal labor law] pre-emption has not occurred."

On August 3, the day after the court issued its summary judgment ruling, PCM filed a motion to compel arbitration pursuant to the terms of the CBA. The earliest date regularly available for a hearing on that motion was September 1, 2016, approximately two weeks after the August 15 trial date. Consequently, PCM also gave notice that it would apply to the court, ex parte, for an order either shortening time to hear the motion prior to trial, or continuing the trial to a date after the motion was heard and decided on regular notice. In its ex parte application, PCM represented that the facts and law supporting its motion to compel arbitration "are identical to those raised in connection with [its] Motion for Summary Judgment."

Diaz filed written opposition to the ex parte application, characterizing it as "nothing short of a desperate ploy to delay [the trial]." He contended PCM had not shown good cause for an order shortening time, as it could have reserved a court date for a motion to compel arbitration much earlier, if it had any genuine interest in arbitrating. Diaz also asserted that PCM knew its last-minute motion to compel arbitration would be denied on the merits, and thus the ex parte application was merely an effort to obtain that *appealable* order before the trial commenced.

6

Diaz argued that not only should PCM's motion to compel arbitration be denied for the same reasons the trial court had just denied its motion for summary judgment, it should also be denied because PCM had waived its right *to compel* arbitration by waiting so long to assert it: "Defendant has had 605 days to move to compel, ha[s] responded to various modes of written discovery going beyond arbitration issues, has produced witnesses for deposition, has deposed Mr. Diaz, has filed several ex parte applications, and has filed a motion for summary judgment which the Court recently denied. All the while it has been sitting on its hands as it relates to filing a motion to compel arbitration. Guided by the *Martinez* [*v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236] opinion, Defendant has waived its right to arbitration."

The facts underlying Diaz's waiver argument were supported by his counsel's declaration, which not only summarized the discovery efforts in the case, but also claimed PCM had engaged in other "dilatory tactics" designed to thwart his efforts to bring this case to trial.

The court heard PCM's ex parte application on the morning of August 4, the day after the motion to compel arbitration was filed, and 11 days before the trial was scheduled to commence. Although we have no transcript of the hearing, the court's minute order reflects that it received and reviewed Diaz's written opposition to the ex parte application and heard oral argument. We consequently infer at least part of that oral argument focused on the *content* of Diaz's opposition; i.e., his contention that PCM's motion to compel was patently without merit, and PCM was seeking ex parte relief for the sole purpose of generating the opportunity for a pretrial appeal from the inevitable denial of that motion.

PCM's counsel, Meyers, claims he understood the trial court's statements during the hearing to express not only its denial of the ex parte application, but also a denial "*in substance* [of] PCM's Motion to Compel." (Italics added.) However, Meyers

7

does not specify what those statements were, nor does he claim the court stated explicitly that the motion to compel arbitration was denied in fact.

The court issued a minute order following the ex parte hearing. That minute order stated only that the court had denied the ex parte application in its entirety, refusing either to shorten time for a hearing on PCM's motion, or to delay the trial so that the motion could be heard on regular notice before trial commenced. The court's minute order reflects no ruling on the motion to compel arbitration itself, and it does not direct any party to prepare and submit a proposed order.

According to Meyers, he telephoned his partner and cocounsel, McLoughlin immediately after the ex parte hearing, and informed him of Meyers's "understanding that the court had denied in substance PCM's Motion to Compel . . . ." The two attorneys then decided McLoughlin would immediately prepare a proposed order reflecting an outright denial of PCM's motion to compel arbitration, and make arrangements for the proposed order to be submitted for "rush filing" and to personally serve on Diaz's counsel that same day.

PCM admits its focus was on obtaining an order from which it could take an immediate appeal: "The purpose of the proposed order was to confirm the trial court's rulings made that morning, *particularly the denial on the merits of PCM's Motion to Compel arbitration, as that was an immediately appealable order.*" (Italics added.) As McLoughlin states: "my intent was to submit the proposed order and, if and when signed by the trial court to confirm the denial, to then appeal from the signed order." Neither Meyers nor McLoughlin claims they informed either the court or Diaz that PCM intended to file an immediate appeal if — but only if — the court signed PCM's proposed order.

The order drafted by PCM's counsel was captioned "PROPOSED ORDER RE: DEFENDANT PCM'S EX PARTE APPLICATION FOR ORDER SHORTENING TIME ON MOTION TO COMPEL ARBITRATION." The caption did not mention the

8

document included any ruling on the motion to compel arbitration.  The text of the proposed order then stated, in its entirety:

"The Court, *having considered the ex parte application* of Defendant PROFESSIONAL COMMUNITY MANAGEMENT, INC. ('PCM') *for an Order shortening time* for hearing on PCM's Motion to Compel Arbitration and to Stay Action Pending Arbitration ('Motion to Compel') *or, alternatively, for a brief continuance* of the August 15, 2016 trial date to hear PCM's Motion to Compel on regular notice; Plaintiff's opposition papers; all of the Court's records and files, including the Motion to Compel; and the arguments of counsel; it is hereby Ordered as follows:

"The Court finds that its August 2, 2016 order denying PCM's motion for summary judgment determined that Plaintiffs claims in this action are not covered by the grievance and arbitration provision of the CBA between PCM and Plaintiffs Union, which was attached as Exhibit 1 to PCM's Motion to Compel. The Court further finds that the Motion to Compel is predicated on the same issue, i.e., that Plaintiffs claims are covered by the grievance and arbitration provision of the CBA, and that PCM is therefore not entitled to compel Plaintiffs claims into arbitration. Accordingly, *the Motion to Compel and* PCM's ex parte request to hear its Motion to Compel, whether on shortened notice or regular notice, are DENIED.

"IT IS SO ORDERED."[3]  (Italics added.)

After PCM's proposed order was submitted to the court electronically on the afternoon of the ex parte hearing date, McLoughlin directed his secretary to contact the court clerk on multiple occasions to find out the filing status of that order.

---

[3]     This proposed order misstates the trial court's summary judgment ruling. The court concluded only that there was a "question of fact whether [the CBA's] arbitration proceedings are fair" and PCM "has not shown that . . . any . . . term of the [C]BA has to be interpreted in order to deal with [Diaz's] FEHA claim."  It made no definitive ruling as to whether Diaz's claims are covered by the grievance and arbitration provision.

9

McLoughlin also personally checked the court's register of actions regularly in an effort to ascertain whether the court had signed it. Finally, on the morning of August 11, PCM's counsel learned the trial court had signed its order, and the order was made available online, in the court's electronic register of actions. Despite that delay, the order itself reflects it was both signed and filed on August 4 (the ex parte hearing date).

Even after signing PCM's proposed order, reflecting the outright denial of its motion to compel arbitration, the court did not cancel the September 1 hearing date originally scheduled for that motion. Instead, the hearing remained on the court's calendar until that date, when the court's minute order reflects it was taken off calendar "per Moving Party's request."

PCM filed its notice of appeal on August 12, 2016, the last court day before the trial was scheduled to commence. On Monday, August 15, the day of trial, PCM filed a notice of a stay of all trial court proceedings, pending appeal.

In November 2016, before the parties had filed any briefs on appeal, Diaz filed a motion to dismiss the appeal. He argued the appeal was a sham because no motion to compel arbitration had been noticed for the date of the trial court's order purportedly denying it, and he asserted PCM had "pulled a fast one on both [him] and the trial court in order to delay trial."

PCM opposed the motion to dismiss, arguing it must be denied because the order appealed from — however unusual its timing — clearly reflected the court's outright denial of its motion to compel arbitration, and consequently it was an immediately appealable ruling. PCM also asserted that pursuant to California Rules of Court, rule 3.1312(b), Diaz was *deemed to have approved* the court's order denying the motion to compel because he failed to assert any objection to it within five days of its service upon him. PCM also argued that Diaz could not have been prejudiced by the court's instant ruling on the motion to compel because (1) that ruling favored him, and (2) he had previously been given a full and fair opportunity to raise any arguments he had

10

in connection with PCM's earlier motion for summary judgment.  Finally, PCM argued its appeal was not frivolous, and denied it had been taken for purposes of delay.

We issued an order denying the motion to dismiss the appeal, and expressing our intention to expedite the resolution of the appeal.

After the parties had completed their briefing on the appeal, we issued two orders.  The first was an order informing PCM and its counsel that we were considering imposing sanctions against them on the grounds that: this appeal is frivolous and taken and maintained solely for the purpose of causing delay; they engaged in bad faith litigation tactics designed to manipulate the court processes; and they made misrepresentations to this court.  We invited them to respond and suggested they address the following concerns:

"1. Why PCM proposed the trial court sign an order denying, rather than granting, its own ex parte application for an order shortening time for hearing on its previously filed motion to compel arbitration, or alternatively for an order continuing the trial date.

"2. Why PCM further proposed the trial court sign an order denying its motion to compel arbitration, when that motion was not set for hearing until four weeks later.

"3. Why PCM filed an appeal from the order it had proposed the trial court sign.

"4. Why PCM waited until August 12, 2016, eight days after the court signed and filed its proposed order, and one court day before trial in this case was scheduled to commence, before filing its notice of appeal from the order it had proposed the court sign.

"5. Why PCM first argued, in opposition to Diaz's motion to dismiss this appeal, that Diaz was not prejudiced by being denied the opportunity to formally oppose its motion to compel arbitration in the trial court, claiming he had already been given a

11

full opportunity to develop his assertion that PCM had waived its right to arbitrate, but then argued in its reply brief on appeal that Diaz was foreclosed from relying on waiver as a basis for affirming the challenged order because PCM's waiver of the right to arbitrate was not addressed in the order PCM had proposed the court issue.

"6. Why PCM's counsel, William A. Meyers, represented to this court in a November 29, 2016 declaration under penalty of perjury, that the order PCM had appealed from — which PCM previously acknowledged in its notice of appeal had been entered on August 4, 2016 — 'was signed by the trial court seven days later, on August 11, 2016.'

"7. Why PCM represented in its opening brief that the August 4, 2016 order it appealed from 'was signed and filed by the trial court six days later, on August 10, 2016.'"

PCM and its counsel filed a response to our order, addressing each of the concerns we listed. They clarified that they did not submit the proposed order denying their own ex parte application to the court until *after* the ex parte hearing was concluded and the court had announced its intention to deny that application. They also explained to our satisfaction that although the trial court's records reflect that their proposed order was signed and filed by the court on August, 4, 2016 — the same date as the ex parte hearing — they had carefully tracked the status of the proposed order over the course of several days after they submitted it, and were informed as late as August 10 that the court had not signed it. They then acted promptly to file their appeal upon receiving confirmation on August 11 that the order had been signed and filed.

Our second order requested both parties to provide us with supplemental briefing addressing the following points:

"1. Whether the trial court abused its discretion by denying PCM's August 4, 2016 ex parte application for an order shortening time for hearing on its motion to compel arbitration, or alternatively for a continuance of the trial date.

12

"2. Whether the trial court's order denying PCM's motion to compel arbitration was invited error.

"3. Whether PCM is legally aggrieved by the trial court's issuance of an order PCM proposed the court issue.

"4. Whether PCM's proposal that the trial court deny its motion to compel arbitration, before Diaz had any opportunity to file opposition and without waiting for the scheduled hearing date, amounted to a waiver or abandonment of that motion.

"5. Whether this court can make a factual finding, pursuant to Code of Civil Procedure section 909, on the issue of whether PCM has waived whatever right it may have had to compel arbitration of the claims asserted by Diaz in this case."

DISCUSSION

*Invited Error*

"Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212.) "The 'doctrine of invited error' is an 'application of the estoppel principle': 'Where a party by his conduct induced the commission of error, he is estopped from asserting it as a ground for reversal' on appeal. [Citation.] At bottom, the doctrine rests on the purpose of the principle, which prevents a party from misleading the trial court and then profiting therefrom in the appellate court." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.) The doctrine of invited error is applicable to a situation where a party invites the court to rule against it on a particular issue, and then challenges the merits of that ruling on appeal. (*Geffcken v. D'Andrea* (2006) 137 Cal.App.4th 1298, 1312 [plaintiff who invited the trial court to enter judgment against it on all causes of action

13

following an adverse ruling, was estopped from arguing on appeal that the judgment was improper as to two of those causes of action].)

In this appeal, PCM claims the trial court erred when it denied PCM's motion to compel arbitration based on the same analysis the court had employed in denying PCM's motion for summary judgment. But the order denying the motion to compel arbitration on that basis was proposed by PCM itself, following an ex parte hearing at which the sole issue before the court had been whether it should shorten time to hear the motion to compel, or alternatively, continue the trial date to allow that motion to be heard on regular notice.

PCM contends it prepared and submitted the proposed order because its counsel believed the trial court *had ruled on the motion to compel itself*, and not just on the ex parte application, during that hearing. It claims the proposed order was intended to document the court's ruling.

The validity of PCM's appeal rests on the credibility of its counsel's contention because if it merely acquiesced in the court's erroneous ruling, that would not qualify as invited error. *(Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at 212 ["the doctrine does not apply when a party, while making the appropriate objections, acquiesces in a judicial determination"].) Thus, if the trial court actually intended to deny PCM's motion to compel arbitration, outright at the ex parte hearing, then PCM did not *invite* that alleged error when it proposed the formal order reflecting that ruling.

However, context counts, and when we consider the circumstances surrounding the ex parte hearing, we conclude the contention of PCM's counsel is not credible. We begin our analysis by noting the court lacks jurisdiction to rule on a motion that has not been properly noticed for hearing on the date in question. (*Svistunoff v. Svistunoff* (1952) 108 Cal.App.2d 638, 641 ["A sufficient notice of the hearing not having been given, the order was void"]; *Harris v. Board of Education* (1957) 152 Cal.App.2d 677, 680, ["where the trial court lacks jurisdiction to make the order, as in a situation

14

where requisite notice has not been given to the plaintiff, it may be vacated by that court at any time thereafter"].)[4] We presume that not only was the court aware of that basic limitation on its power, but it would be especially attuned to that issue in the context of an ex parte application seeking an order shortening time for hearing on a motion.

Moreover, it is undisputed that the court denied PCM's request even to *shorten time* for a noticed hearing on the motion to compel – a ruling that is fundamentally at odds with a supposed decision to actually *decide* the motion at that same ex parte hearing. Stated simply, the court cannot deny an application to shorten time to hear a motion, and *at the same time,* rule on that motion. The latter necessarily encompasses the former. And of course, the court also denied PCM's alternative request to continue the trial date at the ex parte hearing. If it had meant to issue the appealable order denying PCM's motion to compel arbitration at that same time, the court would have been giving PCM carte blanche to nullify the denial of a continuance by simply filing a notice of appeal — which is exactly what PCM did. Thus, the court's purported

---

[4]     In support of his motion to dismiss the appeal, Diaz pointed out that PCM's motion to compel arbitration had not even come before the court when it signed the order denying it. But dismissal of an appeal is not the proper remedy when the trial court issues an order that exceeds its jurisdiction. "Where the law allows an appeal from a judgment or order, it is appealable even though void. (*Phelan v. Superior Court* (1950) 35 Cal.2d 363.) Instead, the "proper procedure is to reverse the void order rather than dismiss the appeal from it." (*Ruiz v. Ruiz* (1980) 104 Cal.App.3d 374, 379, fn. 5.)

In this case, however, reversal of the order on the basis of improper notice would also be inappropriate because PCM — the party challenging the order — clearly consented to the timing of the court's ruling. A judgment or order that would be void in the abstract — because the court acted in excess of its jurisdiction when issuing it — is nonetheless immune from challenge if consented to. "When, as here, the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction." (*In re Griffin* (1967) 67 Cal.2d 343, 347.) It is only the court's fundamental lack of jurisdiction — i.e., "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or parties" (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288), which cannot be remedied by consent.

decision to deny PCM's motion to compel arbitration at the ex parte hearing was fundamentally inconsistent with both aspects of the order we know the court actually did intend to issue.

Additionally, the court's conduct following the ex parte hearing does not support the inference that it intended to deny PCM's motion to compel outright. As we noted, the court did issue a minute order in the wake of the ex parte hearing, which made clear its intention was to rule *only* on PCM's ex parte application, which it denied. And if the court's intention had been to decide the motion to compel at the ex parte hearing, we presume it would have also taken the originally scheduled hearing date off calendar in conjunction with that ruling. But it did not. Instead, as we have already noted, the hearing remained on the court's calendar until the scheduled date, at which time the court's minute order reflects it was taken off calendar at PCM's request.

Nonetheless, PCM claims, in conclusory fashion, that its counsel, Meyers, believed the court was denying its motion to compel "in substance" at the ex parte hearing, based on statements the court made during that hearing. But in his declaration, Meyers fails to identify any specific statement the court made during the hearing to give him that impression; nor does his cocounsel, McLoughlin, identify what statements (if any) Meyers related to him in the immediate wake of the hearing that convinced *him* that Meyers had correctly interpreted the court's intent. Instead, Meyers merely tells us that the court made statements at the hearing "to the effect that" PCM's motion to compel "re-argued that [its] claims are subject to the . . . . arbitration provision," which was an assertion that had already been rejected in connection with the summary judgment motion.

It is not at all surprising the court would have commented about the apparent lack of merit of PCM's motion to compel arbitration during the ex parte hearing because Diaz's written opposition had focused on that issue. The core of Diaz's argument was that PCM's motion to compel arbitration would inevitably be denied, and

16

thus allowing the motion to be heard before trial would accomplish nothing more than to give PCM the opportunity to derail the scheduled trial date with an immediate appeal. In explaining its decision to deny the ex parte application, it would not be surprising that the court expressed some agreement with that argument.

Whatever oral commentary the court might have offered about the supposed merits of the motion to compel arbitration during the hearing, it could not have constituted a "ruling" on that motion, as Meyers suggests. To the contrary, while a court's oral statements may be illustrative of its thinking, it is the court's written order that constitutes the ruling. "'An oral . . . opinion by a trial judge, discussing and purporting to decide the issues, . . . is merely an informal statement of his views. . . . [I]t is not itself the decision of the court or a judgment.'" (*Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 77–78.) It is well settled "that an order is ineffective unless filed with the clerk or entered in the minutes." (*Jablon v. Henneberger* (1949) 33 Cal.2d 773, 775; see *Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 523 ["We decline to consider the court's oral comments . . . or use those comments to construe the minute order entered"]; see also *Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451 ["Because we review the correctness of the order, and not the court's reasons, we will not consider the court's oral comments or use them to undermine the order ultimately entered"].) Indeed, section 1003 specifies that "[e]very direction of a court or judge, *made or entered in writing*, and not included in a judgment, is denominated an order." (Italics added.)

In any event, Meyers does not claim the court specifically stated, "I am denying your motion today," or even words to that effect. And significantly, Meyers does not claim to have expressed *any objection* when he supposedly realized the court was doing that very remarkable — and wholly objectionable — thing. Stated simply, if PCM were genuinely interested in persuading the court *to grant* its motion to compel arbitration, we presume its counsel would have vigorously protested the court's abrupt decision to deny that motion less than 24 hours after it had been filed.

17

But instead of protesting, both Meyers and McLoughlin suggest their only reaction to the court's abrupt and premature denial of PCM's noticed motion was an attempt to *formalize* that ruling. That, more than anything else, suggests Diaz had correctly assessed PCM's motive in pursuing the ex parte application — i.e., it was the possibility of derailing the trial, rather than a sudden desire to arbitrate, that was the true motivation underlying PCM's last-minute motion to compel arbitration.

Even if we assumed PCM's counsel were merely confused about the intended scope of the court's ruling when the ex parte hearing concluded, rather than actually convinced the court had intended to rule on the merits of the noticed motion PCM filed only the day before, that confusion would have been resolved when the court issued its minute order, later that same day. The court's minute order could not have been clearer in setting forth the limited scope of the court's ex parte ruling; and because the court did not ask either party to prepare a formal order, it operated as the court's official ruling on the outcome of the hearing. (See *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1091 [court's minute order is final ruling unless it includes a provision directing a party to prepare a formal order].)

In its response to our request for additional briefing on the issue of invited error, PCM also suggests it was simply complying with California Rules of Court, rule 3.1312 (rule 3.1312), when it submitted its proposed order. However, rule 3.1312 has no application to ex parte applications,[5] and even if it did, it would not have authorized, let alone directed, PCM to submit a proposed order *denying* its own motion, or to have submitted that proposed order to the court on the very day of the hearing.

---

[5] Rule 3.1312 is contained in chapter 5 of division 11 of title 3 of the California Rules of Court. That chapter, encompassing rules 3.1300 to 3.1312, applies only to "Noticed Motions." Chapter 4 of division 11 of title 3, applies to "Ex Parte Applications."

18

Rule 3.1312 specifies that "the party *prevailing* on any motion must, within five days of the ruling, *serve . . .* a proposed order for approval as conforming to the court's order." (Rule 3.1312(a).) It is only after the expiration of an *additional* five days within which the opposing party may state any opposition to the proposed ruling, that the prevailing party "must . . . promptly transmit the proposed order to the court . . . ." (Rule 3.1312(b).)[6] Obviously, rule 3.1312 has no relevance to PCM's decision to file a proposed order *denying* its own ex parte application and motion to compel, on the very day of the supposed ruling — except as it tends to support the inference PCM believed that simply *getting the court to sign its proposed order denying before trial* would qualify as "prevailing" on the motion to compel. After all, as PCM otherwise acknowledges, it submitted its proposed order in an effort to "obtain a clear order . . . from which [it] could appeal."

The content and format of the proposed order also undermines PCM's contention it drafted and submitted the order as part of a good faith effort to formalize the court's *intended* ruling. If that had been the case, we presume PCM would have drafted it in a way to make clear that the order encompassed what its counsel believed were the court's two *distinct* rulings on two *separate* matters. But if anything, this proposed order did the opposite. Rather than identify *two rulings* in its caption, PCM's proposed order identified only the expected one: "[PROPOSED] ORDER RE: DEFENDANT PCM'S EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME ON MOTION TO

---

[6] Rule 3.1312 was also cited by PCM in its opposition to Diaz's motion to dismiss the appeal, as the basis for PCM's contention that Diaz had waived any objection to the court's ruling on the motion to compel. As PCM pointed out, rule 3.1312(b) specifies that if the opposing party fails to notify the prevailing party of any objections to the proposed ruling prepared by the prevailing party within 5 days after service, that failure will be "deemed an approval." However, as we have already noted, rule 3.1312, even if otherwise applicable here, would have required *Diaz*, not PCM, to prepare the proposed ruling — and it specified he would have five days within which to do so. The rule would not have authorized PCM, the ostensible losing party, to file a proposed order until after Diaz had failed to do so within the required five days. (Rule 3.1312(d).)

COMPEL ARBITRATION." And rather than setting out the two distinct rulings separately in the body of the proposed order, PCM buries the key ruling — the court's supposed denial of the motion to compel — at the end of a paragraph setting forth the court's findings, and within the same sentence as the court's denial of the ex parte application: "Accordingly, *the Motion to Compel and* PCM's ex parte request to hear its Motion to Compel, whether on shortened notice or regular notice, are DENIED." (Italics added.)

Given the obscure placement of the language granting the motion to compel within the proposed order, we are not surprised by the assertion of Diaz's counsel that he failed to apprehend it while immersed in his final trial preparation.

Finally, the very careful language employed by PCM's counsel in their declarations describing the court's ruling is also damning. Counsel's assertion that they believed the court had denied PCM's motion to compel "in substance" during the ex parte hearing amounts to what in pleading terms used to be referred to as a "negative pregnant." (See *Armer v. Dorton* (1942) 50 Cal.App.2d 413, 415 [explaining why the specificity of defendant's denial that plaintiff suffered damages in a specific amount operates as an admission that damages were suffered in some other amount].) What Meyer and McLoughlin appear to concede by omission is that they did not believe the court had denied their motion to compel *in fact*. In light of all the surrounding circumstances, we agree.

For all of the foregoing reasons, we reject PCM's contention that the proposed order it submitted to the court in the wake of the ex parte hearing was merely intended to confirm the court's already announced decision to deny its motion to compel arbitration, outright, at that hearing. Instead, we conclude the proposed ruling was submitted to the court in an effort to secure an appealable ruling that PCM and its counsel knew the court — however negatively it might have commented on the perceived merits of PCM's motion to compel during that hearing — had not intended to issue on that date.

20

Accordingly, we conclude the order was the product of PCM's invited error, and PCM is estopped from challenging it on appeal.

*PCM Was Not Aggrieved by the Ex Parte Order*

Although the record is clear that the court did not intend to rule on PCM's motion to compel arbitration at the ex parte hearing, and that PCM and its counsel must have recognized the court did not, we cannot conclude with certainty that the trial court did not fully understand the content of PCM's proposed order by the time it *signed* that order. We believe that to be unlikely, not only for the reasons we have already explained, but also because the court must have realized that by outright *denying* PCM's motion to compel arbitration, it would be substantially expanding — and effectively reversing — its initial minute order denying PCM's ex parte application. We presume that with the trial date so near, the court would not have done that without immediately notifying both sides of the substantial change in its ruling.

Nonetheless, we are loath to conclude the court was actually tricked into signing an order it had not intended to issue, and must therefore acknowledge the possibility the court made a conscious decision to go ahead and deny the motion outright, precisely *because* PCM was proposing that it do so.

But even if we believed the court was not actually misled by PCM's proposed order, it would not change our analysis significantly. We would nonetheless conclude PCM had consented to that order, and was consequently not aggrieved by it.

"A party is not aggrieved by a consent judgment, or one which he has requested the court to decree." (*In re Estate of Gurnsey* (1923) 61 Cal.App. 178, 182.) Thus, "[i]t is an elementary and fundamental rule of appellate procedure that a judgment or order will not be disturbed on an appeal prosecuted by a party who consented to it." (*Sorensen v. Lascy* (1941) 42 Cal.App.2d 606, 608; see *Delagrange v. Sacramento Sav. & Loan Assn.* (1976) 65 Cal.App.3d 828, 831 ["Having consented to the judgment of

21

dismissal, [plaintiff] may not appeal therefrom"]; see also *Hensley v. Hensley* (1987) 190 Cal.App.3d 895, 898-900 [concluding a defendant could not appeal the trial court's order setting aside a default judgment — rather than merely modifying it — because the defendant had argued to the court that it could set aside the judgment].)

Because PCM proposed the order denying its motion to compel arbitration — following the court's initial ruling that merely denied its ex parte application — it consented to that order. And having consented to the order it proposed, PCM cannot claim to be aggrieved by it.

*Waiver of Right to Compel Arbitration*

Alternatively, on the merits of PCM's motion to compel, we conclude PCM has waived its right to compel arbitration. We thus find no error in the court's order denying the motion.

As Diaz has made clear, both in his opposition to PCM's ex parte application and in his brief on appeal, his opposition to the motion would have prominently featured the contention that PCM had waived its right to compel arbitration. He was denied the opportunity to file that opposition when the trial court signed the order denying the motion before his opposition was due.

In his motion to dismiss the appeal, Diaz also asserted it would be a denial of due process if he were required to defend the court's order on appeal, without the benefit of the waiver argument he would have developed in his opposition to the motion. PCM countered that latter assertion by pointing out that Diaz actually *had raised* the issue of waiver below, both in opposition to its motion for summary judgment, and in opposition to its ex parte application.[7] In making that point, PCM was clearly implying

---

[7] PCM asserted: "Respondent twice brings up the point that [he] was denied the opportunity to brief his argument regarding PCM's purported *waiver* of its right to arbitrate. [Citation.] The trial court's order denying PCM's summary judgment motion,

Diaz had otherwise sufficiently *preserved* his assertion of waiver for consideration in connection with this appeal, and was thus not prejudiced by his inability to raise it again in an opposition to the motion. PCM also asserted Diaz could not be prejudiced by an order *denying* its motion to compel — no matter what the circumstances of its issuance — because that result favored him.

Nonetheless, after we denied Diaz's motion to dismiss the appeal, PCM took a different tack in its briefing on the merits. It argued that Diaz *could not rely on waiver* as a basis for preserving his trial court victory. According to PCM, because the record below did not show the trial court had actually made a finding in Diaz's favor on that issue when it denied the motion to compel, we could not uphold the ruling on that basis. Thus, PCM characterized Diaz's "waiver argument [as merely] an attempt *to distract the Court* from the principal issue on appeal, i.e., the legal question of whether [Diaz's] claims fall within the ambit of the . . . mandatory grievance and arbitration provision."[8] (Italics added.) PCM also complained that by raising that issue on appeal,

however, notes that Respondent 'argued that [PCM] *waived* the claim of exclusivity of the arbitration provision by litigating . . .' [Citation.] Respondent again argued waiver in his ex parte opposition."

[8] In response to our request for an explanation of the apparent inconsistency between these assertions, PCM claimed we had unfairly characterized the position it took in its opposition to Diaz's motion to dismiss the appeal. According to PCM, when Diaz asserted in his motion that it would be a denial of due process if he were required to respond to PCM's appeal without the benefit of having developed his waiver claim below, and PCM countered that by pointing out Diaz actually *had argued* his waiver claim in the trial court on two occasions, PCM was *not* implying that Diaz had been given a full opportunity to develop the claim in connection with this appeal. Instead, PCM tells us it made that assertion "solely to address Plaintiff's repeated contention that he was *completely denied* the opportunity to brief the argument." (Italics added.) We are not persuaded. In the context of Diaz's motion to dismiss this appeal, the issue of whether he had been "completely denied" the opportunity to argue waiver before the trial court was not relevant. What was relevant was whether his inability to make the argument as part of an opposition to the motion to compel arbitration would unfairly deprive him of the opportunity to advance that argument on appeal. In that context, it is clear PCM was suggesting that Diaz's ability to assert his claim of waiver on appeal had

23

Diaz was asking this court "to improperly take on the role of factfinder in the first instance."

And to be clear, when PCM claimed the court had never addressed Diaz's waiver argument during the truncated proceedings below — and thus that we were foreclosed from considering it in the first instance — it meant the issue would *never* be considered. PCM was asking us to not only reverse the trial court's order denying its motion to compel, but also to "direct the trial court to *enter a new order granting the motion*" italics added), based solely on an evaluation of whether Diaz's claims "fall within the ambit of the . . . mandatory grievance and arbitration provision."

We cannot do that. As Diaz argued in his motion to dismiss the appeal, it would be patently unfair to deny him the opportunity to assert waiver as a defense to the motion to compel arbitration, simply because PCM successfully induced the trial court to issue a premature order.

The usual remedy in a situation where an appellate court determines the trial court has failed to address a relevant factual issue in its ruling is to remand the case for reconsideration in light of that issue. In fact, that is the remedy employed in the very case cited by PCM in support of its contention it would be inappropriate for us to consider Diaz's claim of waiver here: "The case is remanded with directions to the trial court to weigh all relevant factors in accordance with this decision and determine whether Kemp carried its burden of establishing the criteria for obtaining relief." (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1485.)

In this case, however, we will not remand, because doing so would only serve to advance PCM's goal of delaying trial. Instead, we will invoke section 909 to make a factual finding on appeal.

---

been preserved because he had made his record sufficiently in other contexts.

Section 909 provides:  "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, *the reviewing court may make factual determinations contrary to or in addition to those made by the trial court.* The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may . . . take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal . . . . *This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court* except where in the interests of justice a new trial is required on some or all of the issues."  (Italics added.)

However, "'[a]lthough appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule [8.252(b)] of the California Rules of Court, the authority should be exercised sparingly.  [Citation.]  *Absent exceptional circumstances, no such findings should be made*.'"  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)  "The power created by the statute is discretionary and should be invoked sparingly, and only to affirm the case."  (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 42.)  "The power to take evidence in the Court of Appeal is never used where there is conflicting evidence in the record and substantial evidence supports the trial court's findings."  (*Phillipine Export & Foreign Loan Gurantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1090.)

In response to our request for supplemental briefing on the propriety of making factual findings under section 909 in connection with this appeal, PCM argued it would be inappropriate because section 909 applies only in "cases where trial by jury is not a matter of right or where trial by jury has been waived."  (§ 909.)  PCM points out that if Diaz's complaint against it proceeds to trial (rather than to arbitration), a trial by jury would be a matter of right and that right has not yet been waived.  And because a

jury trial on Diaz's complaint remains theoretically possible, this case is excluded from the scope of allowable appellate fact finding under section 909.

Although Diaz has conceded PCM's argument is correct, we do not. We construe the reference to "cases" in Section 909 to mean specific *matters on appeal*, not the entirety of trial court litigation to which those appeals relate. The breadth of a case on appeal is not always coextensive with breadth of the corresponding case in the trial court. Here, the appellate "case" pending before us is limited to the court's order denying PCM's motion to compel arbitration — a separately appealable matter that is collateral to the liability claims asserted in Diaz's complaint.

"A petition to compel arbitration '"is in essence a suit in equity to compel specific performance of a contract."'" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 411.) The parties have no right to a trial by jury on that suit because "[t]he only question implicated by the petition to compel arbitration is whether the arbitration agreements should be specifically enforced. . . . The plaintiff is not impermissibly denied a jury trial when the superior court decides only the facts necessary to determine specific enforceability of an arbitration agreement, an equitable question as to which no jury trial right exists." (*Id.* at p. 412; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) Hence, while we may presume the parties would have a right to a jury trial on claims asserted in Diaz's complaint, they have no such right in connection with the subject of *this appeal*.

The obvious purpose of section 909's restriction is to preserve the parties' right to have a jury act as finder of fact in matters where that right applies, and to ensure the appellate court does not engage in any factual finding which might curtail or invade that jury trial right. But because the parties had no such right in connection with PCM's motion to compel arbitration, section 909 does not restrict our ability to engage in factual finding in connection with the appeal from the trial court's denial of that motion.

26

In the unusual circumstances of this appeal, we conclude it is appropriate for us to make a factual finding relevant to the merits of PCM's appeal — i.e., that PCM has acted in bad faith in connection with the motion to compel arbitration. Indeed, we have already reached that conclusion in analyzing PCM's efforts to obtain the appealable order that landed them in our court, and by invoking our authority under section 909, we are merely acknowledging that our finding also affects the merits of the motion to compel arbitration.

In addition to the facts we have already discussed, our conclusion is supported by the fact PCM never made any effort to compel this case *into* arbitration until the eve of trial. It is undisputed that PCM was at all times aware of the grievance and arbitration provision, and had pleaded its existence as an affirmative defense. However, PCM chose to rely upon that provision solely as a basis for seeking summary judgment, arguing the grievance and arbitration process operated as a complete bar to Diaz maintaining his complaint in *any* forum. That motion did not reflect any desire *to arbitrate.*

It was not until the court denied that motion for summary judgment, and with the trial date looming, that PCM suddenly took the position Diaz was required *to pursue his claims in arbitration*, rather than in court. It sought an order shortening time to hear its motion to compel arbitration only 11 days before trial.[9] Because the trial's scheduled start date was a Monday, and PCM was required to give "not less than 10 days' notice of the date set for the hearing" (§ 1290.2), the earliest date the *court could*

---

[9]    PCM contends it acted promptly in seeking to compel arbitration immediately after the trial court denied its motion for summary judgment. However, PCM does not explain why — if its goal was to compel arbitration in the event its summary judgment motion was denied — it could not have filed that motion as an *alternative* to the motion for summary judgment. At a minimum, as Diaz points out, PCM could have *reserved a date* for the motion to compel, so it would be assured of a hearing before trial.

27

*have set that hearing*, absent Diaz's agreement, was *on the trial date*. To say that seems unlikely is an understatement. So the only plausible relief PCM might have obtained in its ex parte application was its alternative request: a continuance of the trial date.

When the court denied the ex parte application, PCM's response was to propose the court immediately deny its motion to compel arbitration, outright — again, not the response of a party that actually wants to arbitrate. But as we have already explained, PCM's right *to appeal* from that order would give it, not only, the unilateral ability to delay the trial — the very relief the court had denied it at the ex parte hearing — but also the opportunity to, in effect, reargue the merits of its summary judgment motion in a pretrial appeal. These additional facts also support our conclusion that it was those goals — rather than any genuine desire to compel Diaz *into* arbitration — which were the true motivation for PCM's motion to compel.

Based on that finding, combined with the other undisputed procedural facts in this case — i.e., PCM's extreme delay in seeking arbitration, its participation in discovery and its pursuit of summary judgment in the trial court — we conclude as a matter of law that PCM has waived whatever right it had to compel arbitration of Diaz's complaint.

"""California courts have found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. [Citations.] The decisions likewise hold that the 'bad faith' or 'wilful misconduct' of a party may constitute a waiver and thus justify a refusal to compel arbitration.""" (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196.)

PCM's conduct demonstrates all of those bases for finding waiver. In addition to its bad faith assertion of the motion to compel arbitration, PCM has

28

participated in discovery and even moved for summary judgment in the trial court.[10] Those steps were inconsistent with PCM's right to seek resolution of this case in the arbitral forum. (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 448-449 [efforts to litigate the merits of a case in court are inconsistent with right to arbitrate]; *Berman v. HealthNet* (2000) 80 Cal.App.4th 1359, 1372 ["the crucial inquiry is . . . whether the party has availed itself of discovery not available in arbitration"].)[11] It is difficult to conceive of a more unreasonable delay in seeking arbitration — as we have already pointed out, PCM's motion to compel arbitration was filed so late that it could not even have been heard before the scheduled trial date. A significant delay in seeking arbitration may, in itself, result in a finding of prejudice: "'[A] petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an "expedient, efficient and cost-effective method to resolve disputes."'" (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 377.) In this case, PCM had successfully moved to continue the trial date before it made any effort to invoke the arbitration provision — thus stretching out the litigation process — and by the time it finally sought to compel this case *into* arbitration, Diaz was in the final stage of his trial preparation. At that point, forcing Diaz *into* arbitration would clearly have deprived him of its advantages.

---

[10] PCM suggests its participation in discovery should be accorded little significance, because its efforts were limited to taking Diaz's deposition — it claims that it propounded no written discovery. We cannot agree. The fact PCM was apparently satisfied by the information it gained by taking Diaz's deposition, and felt no need to engage in other forms of discovery, does not change the fact that it obtained all the discovery it wanted. The issue of whether a party has engaged in discovery is not determined by *how much* discovery was necessary in a particular case.

[11] While it is true that PCM's motion for summary judgment was also an effort to invoke the arbitration provision, its goal in doing so was to establish Diaz was foreclosed from litigating the merits of his claims in that arbitral forum as well. By asking the trial court to rule on that motion, PCM was seeking a final and binding disposition of Diaz's complaint.

Based on the foregoing, we conclude PCM has waived its right to compel arbitration of Diaz's claims, as a matter of law.

*Sanctions*

Code of Civil Procedure section 907 provides that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." An appeal is considered frivolous "when it is prosecuted for an improper motive — to harass the respondent or delay the effect of an adverse judgment — or when it indisputably has no merit — when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650; Cal. Rules of Court, rule 8.276(a).) "The two standards are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." (*In re Marriage of Flaherty, supra*, 31 Cal.3d at p. 649.)

In this case, we have already explained our conclusion that PCM essentially generated this appeal unilaterally, by inducing the trial court to sign an order *denying its own motion* to compel arbitration — an order it knew the court had not intended to issue prior to trial. It did so by preparing an intentionally misleading proposed order, and presenting it to the trial court without disclosing that it intended to file an immediate appeal if the court signed the order.

By engaging in this conduct, PCM made clear it was not only consenting to the order, it was promoting it. Under those circumstances, appealing from the order was frivolous. We conclude PCM engaged in this bad faith conduct for an improper motive — i.e., delaying the pending trial, and obtaining immediate appellate review of the trial court's order denying its motion for summary judgment — not because it genuinely wanted to arbitrate.

30

Based on these findings, we impose sanctions against both PCM and its counsel. The damages suffered by Diaz resulting from this frivolous appeal are the reasonable value of counsel's services in preparing for the aborted trial, to the extent preparation for trial must necessarily be repeated, and the reasonable value of counsel's services in defending this appeal. Excluded from this award are pretrial services that need not be repeated, e.g., the preparation of motions in limine, trial briefs and the like. The damages suffered by this court for processing this appeal are set at $8,500. (See *In re Marriage of Gong and Kwong* (2008) 163 Cal.App.4th 510, 520 [explaining "the cost of processing an appeal that results in an opinion by the court to be approximately $8,500"].)

DISPOSITION

The order denying PCM's motion to compel arbitration is affirmed and the case is remanded to the trial court. As sanctions for bringing this frivolous appeal, PCM and its counsel, Hill Farrer & Burrill LLP, E. Sean McLoughlin and William A. Meyers, are ordered, jointly and severally, to pay the following amounts: to the clerk of this court, $8,500, no later than 15 days after the remittitur is issued; to Diaz, an amount equal to the reasonable value of services performed by his attorney in preparing for the trial that was scheduled to commence on August 15, 2016, and in responding to this appeal, but not to include pretrial services which need not be repeated. The trial court is instructed to set a hearing for the determination of that amount and to determine the amount of the sanction following remand.

The clerk of the court is directed to deposit the sums paid in the general fund.  Attorneys E. Sean McLoughlin and William A. Meyers and the clerk of this court are each ordered to forward a copy of this opinion to the State Bar upon return of the remittitur.  (Bus. & Prof. Code, §§ 6086.7, subd. (a), 6068, subd. (o )(3); *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 37–38.)

IKOLA, J.

WE CONCUR:

O'LEARY, P. J.

ARONSON, J.

Filed 11/8/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRANCISCO DIAZ, | |
| Plaintiff and Respondent, | G053909 |
| v. | (Super. Ct. No. 30-2014-00752373) |
| PROFESSIONAL COMMUNITY MANAGEMENT, INC., | O R D E R |
| Defendant and Appellant. | |

The Ehrlich Law Firm has requested that our opinion filed on October 17, 2017, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


ARONSON, J.